DISCIPLINARY COUNSEL *v.* GOSLING.

[Cite as *Disciplinary Counsel v. Gosling,*
114 Ohio St.3d 474, 2007-Ohio-4267.]

(No. 2007–0735—Submitted June 6, 2007—Decided August 29, 2007.)

---

**Per Curiam.**

{¶ 1} Respondent, John Gregory Gosling of McArthur, Ohio, Attorney Registration No. 0031040, was admitted to the Ohio bar in 1974. In 1997, we suspended respondent's license to practice law for two years, with one year stayed, for his violation of the following Disciplinary Rules: DR 1–102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (prohibiting neglect of an entrusted legal matter), and 7–101(A)(2) (requiring a lawyer to carry out a contract of employment), as well as Gov.Bar R. V(4)(G) (requiring lawyers to cooperate with and assist in any disciplinary investigation) and VI(1) (requiring lawyers to register biennially with this court). *Disciplinary Counsel v. Gosling* (1997), 79 Ohio St.3d 113, 679 N.E.2d 1096. For the reasons that follow, we now conclude that additional disciplinary violations warrant respondent's indefinite suspension from the practice of law.

{¶ 2} On October 9, 2006, relator, Disciplinary Counsel, filed a complaint charging respondent with professional misconduct. Attempts to serve respondent by certified mail were unsuccessful, and the complaint was served on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Respondent did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} In June 2004, Merfel Conley retained respondent to assist him in the preparation of a shared-parenting plan, and he paid respondent an initial $800 for his services. Respondent promised to complete a draft of the plan within one or two weeks. Conley called respondent repeatedly in July, August, and September 2004, inquiring about respondent's progress, but respondent explained that he had been very busy and had been unable to complete the document.

{¶ 4} Finally in mid-September 2004, respondent completed the document for Merfel. The two of them met, and Merfel approved the document and paid respondent an additional $200 for his services. Respondent promised to send the document to both Merfel and the other party that same week, but Merfel received no documents from respondent during the next several weeks. When Merfel called respondent in November 2004, respondent said that he had been very busy but would send the shared-parenting document soon. Merfel finally received the document from respondent in mid-December 2004.

{¶ 5} Because the shared-parenting plan was not acceptable to the child's mother, Conley and respondent met on January 21, 2005, to discuss filing a motion for a hearing. Respondent told Conley that he would prepare an affidavit

for Conley to sign by the end of the following week. Respondent did not prepare the affidavit and did not request a court date for a hearing on a motion for shared parenting, even though he and his secretary assured Conley that those steps would be taken.

{¶ 6} On March 30, 2005, Conley sent a letter to respondent advising him that respondent's "lack of effort" had prompted Conley to seek a new lawyer. Conley asked respondent to return all original documents, prepare an itemized accounting of all work performed, and return the unearned portion of the attorney fees that Conley had paid. Because respondent did not reply to Conley's letter, Conley filed a grievance against respondent with relator on April 26, 2005.

{¶ 7} Relator sent letters to respondent in April and July 2005, asking him to reply to Conley's grievance, but respondent did not answer. In August 2005, respondent appeared at relator's office for a deposition in response to a subpoena. Respondent admitted that the facts alleged in Conley's grievance were true, and he agreed to return Conley's entire retainer and all of his documents. Respondent acknowledged that he is a recovering alcoholic, and he told relator that he is "experimenting" with alcohol again after having remained sober for ten years. During the deposition, respondent agreed to contact the Ohio Lawyers Assistance Program ("OLAP"), and in August 2005, he did return the entire $1,000 that Conley had paid him for legal services. Respondent failed, however, to contact OLAP, even though relator had sent letters to him in December 2005 and June 2006, urging him to do so and indicating that relator's file could not be closed until respondent made that contact. Respondent also never responded when relator advised him in September 2006 that a formal disciplinary complaint would be filed against him.

{¶ 8} We agree with the board's conclusion that these actions by respondent violated DR 1–102(A)(4), 6–101(A)(3), and 9–102(B)(4) (requiring prompt delivery of the client's funds or other properties in the lawyer's possession), as well as Gov.Bar R. V(4)(G).

## Sanction

{¶ 9} Relator recommended that respondent be indefinitely suspended from the practice of law. The master commissioner and the board agreed. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 10} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board cited respondent's prior disciplinary record as an aggravating factor, BCGD Proc.Reg. 10(B)(1)(a), and it noted two mitigating factors as well: the absence of

a dishonest or selfish motive underlying respondent's misconduct and his good-faith effort to make restitution or to rectify the consequences of his actions. BCGD Proc.Reg. 10(B)(2)(b) and (c).

{¶ 11} After weighing the aggravating and mitigating factors in this case, we agree with the board that respondent should be indefinitely suspended from the practice of law. His earlier professional misconduct appears to have been alcohol-related, because we stayed a portion of his 1997 suspension on condition that he attend Alcoholics Anonymous meetings and complete an OLAP contract. See *Disciplinary Counsel v. Gosling*, 79 Ohio St.3d at 114, 679 N.E.2d 1096. Now respondent has admitted to relator that he is drinking again, and his neglect of Merfel Conley's legal matter in this case echoes his neglect of his clients' matters in that earlier case. Troubling as well is respondent's failure to cooperate fully in relator's latest investigation and his failure to follow through on his promise to contact OLAP. An indefinite suspension will protect the public from respondent's recurring pattern of neglecting his clients' affairs and will emphasize to him the importance of addressing his apparent abuse of alcohol.

{¶ 12} We have ordered indefinite suspensions in similar cases. See, e.g., *Columbus Bar Assn. v. Harris*, 108 Ohio St.3d 543, 2006-Ohio-1715, 844 N.E.2d 1202, ¶ 22 ("As we have routinely explained, neglect of legal matters and the failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension from the practice of law"); *Dayton Bar Assn. v. Fox*, 108 Ohio St.3d 444, 2006-Ohio-1328, 844 N.E.2d 346, ¶ 9–10 (indefinite suspension ordered for an attorney who failed to contact a client for many months, failed to file a document for another client, and failed to cooperate in the disciplinary investigation).

{¶ 13} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. If respondent files a petition for reinstatement to the bar, in addition to the requirements of Gov.Bar R. V(10), he must show that he has entered into a contract with OLAP and has successfully fulfilled all its terms. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.