MAHONING COUNTY BAR ASSOCIATION *v.* SAKMAR.

[Cite as *Mahoning Cty. Bar Assn. v. Sakmar*,

127 Ohio St.3d 244, 2010-Ohio-5720.]

*Attorneys at law — Misconduct — Failure to cooperate in disciplinary investigation — Conduct adversely reflecting on fitness to practice law — Conduct prejudicial to the administration of justice — Two-year suspension, partially stayed.*

(No. 2010-1201 — Submitted September 15, 2010 — Decided December 1, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-080.

_____

**Per Curiam**.

{¶ 1}  Respondent, Michael A. Sakmar of Boardman, Ohio, Attorney Registration No. 0062443, was admitted to the practice of law in Ohio in 1993.

{¶ 2}  On October 12, 2009, relator, Mahoning County Bar Association, filed a complaint charging respondent with four counts of professional misconduct.  Although respondent was served with the complaint on October 17, 2009, he did not file an answer or otherwise appear in the action.  Therefore, on April 20, 2010, relator moved for default pursuant to Gov.Bar R. V(6)(F).  A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and recommending that respondent be suspended from the practice of law for 12 months, serve two years of monitored probation upon his return to the practice of law, and be required to complete eight hours of continuing legal education in law-office management in addition to the continuing-legal-education requirements of

Gov.Bar R. X. The board, however, recommends a two-year suspension with one year stayed, two years of monitored probation and eight hours of continuing legal education in law-office management. For reasons that follow, we accept the board's recommendation.

**Misconduct**

{¶ 3} In support of its motion for default, relator submitted three affidavits: two from Youngstown Municipal Court judges and one from the grievance committee member assigned to investigate a grievance filed by one of those judges. Based upon those affidavits, the master commissioner and board found that from February 2006 to December 2008, respondent had either been tardy or failed to appear for numerous hearings before the two municipal court judges and that he had once left a hearing early against the judge's specific instruction to remain.

{¶ 4} As a result of this conduct, respondent was cited for contempt multiple times and found guilty of contempt and fined on two separate occasions in the Youngstown Municipal Court. And when respondent failed to appear for a scheduled hearing in August 2007, the judge issued a capias for his arrest but withdrew it when respondent paid the $60 capias fee.

{¶ 5} The master commissioner and board did not expressly make factual findings regarding respondent's failure to cooperate in the resulting disciplinary proceeding. But the affidavit of relator's attorney investigator demonstrates that in January and February 2009, relator sent three separate letters to respondent, including one by certified mail, advising him of the grievance and asking him to submit a written response. Having received no response, in April 2009, relator sent a fourth letter advising respondent that the grievance committee would be filing a formal complaint against him. On April 1 of the following year, when the investigator executed his affidavit, respondent had not responded to relator's inquiry.

2

**{¶ 6}** The master commissioner and board found that there was clear and convincing evidence that respondent had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

### Sanction

**{¶ 7}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 8}** Respondent has either been tardy or failed to appear on behalf of his clients at multiple court hearings. He has left a proceeding against the presiding judge's express instruction to remain in the courtroom. Although judges have given him ample opportunity to correct this behavior, respondent has failed to do so. This conduct demonstrates a lack of diligence and a profound disrespect not only for the tribunal, but also for the other attorneys and parties appearing before the tribunal. It also impedes the efficient administration of justice.

**{¶ 9}** Mitigating factors in this case include the absence of a prior disciplinary record and the absence of a dishonest or selfish motive. BCGD Proc.Reg. 10(B)(2)(a) and (b). In aggravation, however, the master commissioner and board found that respondent had engaged in a pattern of misconduct involving multiple offenses and had failed to cooperate in the disciplinary process. See BCGD Proc.Reg. 10(B)(1)(c), (d), and (e).

**{¶ 10}** The master commissioner recommended that the appropriate sanction for respondent's misconduct is a 12-month suspension, two years of monitored probation, and eight hours of continuing legal education focusing on law-office management. The board, however, recommends that respondent be suspended for two years, with one year stayed.

**{¶ 11}** We have previously recognized that neglect of an entrusted legal matter coupled with a failure to cooperate in the ensuing disciplinary investigation warrants an indefinite suspension. E.g., *Cleveland Metro. Bar Assn. v. Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825, ¶ 16; *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10. In *Gottehrer*, we imposed an indefinite suspension for conduct that violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep clients reasonably informed about the status of their matters), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 1.15(d) (requiring a lawyer to promptly deliver to the client any funds or other property that the client is entitled to receive), and 8.1(b) (prohibiting an attorney from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G). *Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825, at ¶ 17. In *Gottehrer*, however, the record demonstrated not only that

the attorney had neglected a client matter, but also that his neglect resulted in the dismissal of the client's appeal and economic harm to the client from the attorney's retention of an unearned fee. Id. at ¶ 7.

{¶ 12} At the other end of the spectrum is a case in which we imposed a six-month suspension upon an attorney for deliberately disobeying a court order and then lying to the court about it. *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180. Id. at ¶ 26, 54. In mitigation, the attorney had no prior disciplinary record, displayed a cooperative attitude in the disciplinary proceedings, had already had sanctions imposed on him by the juvenile court, and had presented evidence attesting to his good character and reputation. Id. at ¶ 32. Aggravating factors included the attorney's commission of multiple offenses and a selfish or dishonest motive. Id. at ¶ 34, 36.

{¶ 13} Another case resulted in a sanction between the two. *Disciplinary Counsel v. Nicks*, 124 Ohio St.3d 460, 2010-Ohio-600, 923 N.E.2d 598. In *Nicks*, we imposed a two-year suspension, with 18 months stayed on conditions for violations of Prof.Cond.R. 1.3, 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation), 8.4(d), and 8.4(h). Id. at ¶ 8. The attorney had collected fees for a probate matter on two separate occasions without first obtaining the court's approval, retained fees in excess of those approved by the court, and failed to file an estate-tax return while retaining the funds his client remitted for estate taxes. Id. at ¶ 4-6. In a second matter, the attorney was found to be in contempt of court for his failure to file an estate-distribution report or appear at a status conference on the case. Id. at ¶ 11. Although the attorney had engaged in multiple offenses and failed to make restitution, in mitigation we found that he had no prior disciplinary record, had cooperated fully in the disciplinary process, and had a chemical dependence that had contributed to his misconduct. Id. at ¶ 15-16, citing

BCGD Proc.Reg. 10(B)(1)(d) and (i) and 10(B)(2)(a), (d), and (g). The attorney had also acknowledged the wrongful nature of his conduct and accepted full responsibility for its consequences. Id. at ¶ 16.

{¶ 14} This case is different from two of the three cases cited above. The record does not demonstrate that any of respondent's clients suffered economic harm or prejudice as a result of his tardiness or failure to appear at scheduled hearings as the clients did in *Gottehrer*. But respondent engaged in a pattern of misconduct by arriving late or failing to attend numerous hearings for various clients over a period of several years, while the misconduct in *Rohrer* was a single occurrence and the attorney cooperated in the disciplinary proceeding and presented evidence in mitigation.

{¶ 15} The case involving misconduct most comparable to respondent's tardiness and failure to attend scheduled hearings is *Nicks*, which involved multiple violations of a local court rule. Nicks's conduct, however, was arguably more egregious than respondent's because he engaged in conduct involving fraud, deceit, dishonesty, or misrepresentation and retained client funds intended to pay estate taxes. But the severity of his misconduct was also tempered by his cooperation in the disciplinary proceedings, acknowledgement of the wrongfulness of his misconduct, and his diagnosed chemical dependence.

{¶ 16} Having reviewed the record, weighed the aggravating and mitigating factors, and considered the sanctions imposed for comparable conduct, we adopt the board's recommended sanction of a two-year suspension from the practice of law, with the second year stayed on condition of no further violations, two years of monitored probation upon respondent's return to the practice of law, and eight hours of continuing legal education in law-office management in addition to the continuing-legal-education requirements of Gov.Bar R. X.

{¶ 17} Accordingly, Michael A. Sakmar is suspended from the practice of law in Ohio for two years, with the second year of the suspension stayed on

condition of no further violations. If respondent fails to comply with the condition of the stay, the stay will be lifted, and he will serve the entire two-year suspension. Upon his reinstatement to the practice of law, he shall serve two years of monitored probation in accordance with Gov.Bar R. V(9) and complete eight hours of continuing legal education in law-office management in addition to the continuing-legal-education requirements of Gov.Bar R. X. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Ronald E. Slipski and David C. Comstock Jr., for relator.

_____