DISCIPLINARY COUNSEL *v.* DAVIS.

[Cite as *Disciplinary Counsel v. Davis*, 130 Ohio St.3d 440, 2011-Ohio-6016.]

*Attorneys—Misconduct—Indefinite suspension.*

(No. 2011-1081—Submitted August 8, 2011—Decided November 29, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-056.

_____

**Per Curiam.**

{¶ 1} Respondent, Sherry Darlene Davis of Waverly, Ohio, Attorney Registration No. 0068036, was admitted to the practice of law in Ohio in 1997. In 2009, Davis was suspended from the practice of law for two years, with one year conditionally stayed. *Disciplinary Counsel v. Davis*, 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, ¶ 17. On April 29, 2010, in response to a motion to show cause filed by relator, Disciplinary Counsel, the court imposed an actual two-year suspension on Davis. Davis's term suspension has expired, but the conditions of her reinstatement remain unfulfilled, and at the present time, Davis has not applied for reinstatement.

{¶ 2} On May 27, 2010, relator, Disciplinary Counsel, charged Davis in a three-count complaint with numerous violations of the Rules of Professional Conduct. This is Davis's third appearance before this court. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend Davis's license to practice law. The parties have submitted stipulations of fact and misconduct for some of the allegations, and a panel of the board conducted a hearing on the remaining allegations. The panel accepted the parties' agreed stipulations, made additional findings of fact and conclusions of law, and recommended that Davis be indefinitely suspended from the practice of law and

make restitution to her clients. The board agreed, adding that the suspension should run concurrently to her term suspension that is continuing. We adopt the board's findings of fact and conclusions of law that Davis violated ethical standards incumbent on Ohio lawyers, but we impose a separate indefinite suspension of Davis's license to practice law in Ohio.

## Misconduct

### Count 1 (The Cash Station Matter)

{¶ 3} Joann Taylor paid Davis $300 to work on a custody matter for her daughter involving Taylor's grandson. Taylor also hired Davis to do garnishment and collection work for a business called Cash Station. Davis did no work on the custody matter prior to her suspension and failed to return the client file and any unused fees as promised in her postsuspension letter. Disciplinary Counsel also alleged that Davis failed to return files on uncompleted work and fees to Cash Station.

{¶ 4} The board found that during her suspension, Davis continued to receive checks belonging to Cash Station totaling $1,299.58. Disciplinary Counsel alleged that the funds were converted for Davis's personal use and rightfully belonged to Cash Station. Testimony from witnesses Taylor (former manager of Cash Station) and Debra Stone (record-keeper of Cash Station) showed that the Portsmouth Municipal Court sent checks directly to Davis for money that Davis collected through her garnishment work. Davis was to keep her fee and remit the balance to Cash Station. The municipal court received payments from garnishees and sent checks to Davis from November 26, 2007, until April 30, 2009.

{¶ 5} Taylor alleged that Cash Station had received only a few checks from Davis and that there were many more payments owed to it. Disciplinary Counsel, however, could not provide detailed records with the names of garnishees, how much of each check was retained by Davis, or how much she sent

her client, Cash Station. Thus, the board concluded that no definitive proof existed to substantiate Disciplinary Counsel's claim that Davis kept the entire amount remitted by the court and converted it. However, the board also concluded that the stipulations documented Davis's repeated failure to reply to emailed letters of inquiry and requests for documents that she had promised to submit to Disciplinary Counsel. Further, Davis failed to produce the requested materials after the single telephone conversation she had with Disciplinary Counsel.

{¶ 6} The parties have stipulated, and we agree, that Davis's conduct violated Prof.Cond.R. 8.1(b) (requiring a lawyer to respond to a demand for information from a disciplinary authority) and 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice) and Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in a disciplinary investigation). In addition, the board also concluded, and we agree, that as alleged in the complaint, Davis's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.16(d) (as part of the termination of representation, requiring a lawyer to deliver to the client all papers and property to which the client is entitled), and 1.16(e) (requiring a lawyer who withdraws from employment to refund promptly any part of a fee paid in advance that has not been earned).

{¶ 7} Because Disciplinary Counsel did not present clear and convincing evidence that Davis converted funds remitted by Portsmouth Municipal Court that were the rightful possession of Cash Station, the board dismissed the alleged violation of Prof.Cond.R. 8.4(b) (prohibiting an illegal act that reflects adversely on the lawyer's honesty or trustworthiness). Further, the board dismissed alleged violations of both Prof.Cond.R. 1.5(a) (prohibiting a clearly excessive fee) and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law).

*Count 2 (The O'Rourke Matter)*

**{¶ 8}** Steven O'Rourke paid Davis $2,500 to appeal from a divorce judgment. Davis filed an appeal, as well as several motions for stay, which were denied, after which Davis failed to do any work on the case. In February 2009, Davis notified O'Rourke of her license suspension and promised to refund any unused portion of the retainer. O'Rourke made several requests for the return of his complete file and his retainer, but Davis ignored him, so he filed a grievance.

**{¶ 9}** On November 5, 2009, Disciplinary Counsel sent a letter of inquiry concerning O'Rourke's grievance by certified mail to the address that Davis had registered with the Supreme Court Office of Attorney Services. The letter was returned unclaimed. A few weeks later, Disciplinary Counsel was able to communicate with Davis by email, and she claimed ignorance of the grievance but promised to cooperate. She ignored further emails.

**{¶ 10}** O'Rourke testified that the two-year period in which his appeal was delayed was harmful both to him and to his children, whose company he was denied. Further, because Davis did not return the $2,500 retainer, he had trouble retaining another attorney to complete the work. O'Rourke further testified that Davis also promised to deliver a draft of the appellate brief, which she claimed to have almost completed, to O'Rourke's new attorney, but she failed to do so. The board further noted that as of the date of the board report, neither the retainer nor files had been returned to O'Rourke.

**{¶ 11}** The parties have stipulated, and we agree, that Davis's conduct violated Prof.Cond.R. 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar.R. V(4)(G).

**{¶ 12}** In addition, the board also concluded, and we agree, that Davis's conduct violated Prof.Cond.R. 1.16(d), 1.16(e), and 1.3.

**{¶ 13}** The board dismissed an alleged violation of Prof.Cond.R. 1.5(a) because Disciplinary Counsel failed to prove by clear and convincing evidence

that Davis made an agreement for, charged, or collected a clearly excessive fee. We concur and dismiss this charge.

*Count 3 (The Shreck Matter)*

**{¶ 14}** In March 2005, John and Carolyn Shreck hired Davis to prepare an estate plan for them. When they learned in 2009 of Davis's license suspension, they contacted her to obtain their original wills and estate-planning documents. The Shrecks left multiple telephone messages for Davis that went unreturned, and they sent a letter to her by certified mail, which was returned unclaimed. The Shrecks were ultimately able to obtain their original wills from Davis's former law firm, but when they were unable to obtain their complete files, they filed a grievance with Disciplinary Counsel.

**{¶ 15}** Disciplinary Counsel mailed a letter of inquiry to the address that Davis had registered with this court, but it was returned unclaimed. Davis replied to Disciplinary Counsel's email, stating that she was unaware of any new grievances but would promptly send the requested documents as soon as she received the new grievances. Disciplinary Counsel mailed a second letter of inquiry by regular mail, which was not returned, but no response was received. The board found that the signed stipulations established Davis's failure to reply to the grievance or to the email correspondences requesting the return of the Shrecks' estate-planning file.

**{¶ 16}** The parties have stipulated, and we agree, that Davis's conduct violated Prof.Cond.R. 1.16(d), 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar.R. V(4)(G).

**Aggravation and Mitigation**

**{¶ 17}** The panel and board found the following aggravating factors pursuant to Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."): Davis has been previously disciplined; she exhibited a dishonest or selfish motive by accepting client retainers, performing

little to no work, and then failing to return the client retainers and failing to make restitution; she engaged in a pattern of misconduct involving three clients and multiple offenses; she failed to cooperate in the disciplinary process; she refused to acknowledge the wrongful nature of her conduct; and she harmed vulnerable victims. BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (d), (e), (g), and (h).

{¶ 18} The board concluded, and we agree, that there are no mitigating factors.

### Sanction

{¶ 19} When imposing sanctions for attorney misconduct, in addition to weighing aggravation and mitigation, we consider all relevant factors, including the duties violated by the lawyer in question and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

{¶ 20} We have identified Davis's breaches of her duties to her clients, the legal profession, and the judicial system. The stipulations submitted by the parties contain no recommended sanction. At the hearing, Disciplinary Counsel requested an indefinite suspension based on the nature of the misconduct, the harm caused, the lack of mitigation, the profusion of aggravating factors, and precedent.

{¶ 21} Disciplinary Counsel cited three cases in support of his recommendation to the panel, all of which we find similar to the case at bar. In *Cleveland Metro. Bar Assn. v. Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825, we indefinitely suspended an attorney for accepting retainers in two cases in which he failed to do the work, failed to respond to communications from clients, failed to return retainers, and failed to cooperate with the disciplinary process. Id. at ¶ 3. In *Columbus Bar Assn. v. Clovis*, 125 Ohio St.3d 434, 2010-Ohio-1859, 928 N.E.2d 1078, we indefinitely suspended an attorney for failing to do work, failing to return documents and a $4,000 retainer, and

failing to cooperate in the disciplinary process. Id. at ¶ 2. Finally, in *Columbus Bar Assn. v. Van Sickle*, 128 Ohio St.3d 376, 2011-Ohio-774, 944 N.E.2d 677, we indefinitely suspended an attorney for practicing while under a license suspension, failing to register with the Supreme Court, failing to complete work, and failing to respond to requests for return of funds and documentation. That respondent had shown some evidence of past depression. Id. at ¶ 15.

{¶ 22} Having considered the aggravating factors and the fact that no mitigating factors exist in this case, and having considered the sanctions previously imposed for comparable conduct, we adopt the board's recommended sanction of an indefinite suspension. We also order Davis to make restitution to her clients Joann Taylor and Steven O'Rourke.

{¶ 23} Accordingly, we indefinitely suspend Sherry Darlene Davis from the practice of law. We condition any future reinstatement on the submission of proof that Davis has fulfilled the conditions of both her term suspension and her indefinite suspension and has made restitution as follows: $300 to Joann Taylor, an accounting to Cash Station and return of any funds not accounted for, and $2,500 to Steven O'Rourke. Costs are taxed to Davis.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Sherry Darlene Davis, pro se.

_____